NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1751
_____

BILL H. DOMINGUEZ, on behalf of himself
And all others similarly situated,
                                                Appellant
                              v.

YAHOO, INC.
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-13-cv-01887)
District Judge: Honorable Michael M. Baylson
_____

Argued November 21, 2014

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Filed: October 23, 2015)

James A. Francis, Esq.   [Argued]
David A. Searles, Esq.
John Soumilas, Esq.
Francis & Mailman
100 South Broad Street
Land Title Building, 19th Floor
Philadelphia, PA   19110
        Counsel for Appellant

Ian C. Ballon, Esq.   (Argued)
Lori Chang, Esq.
Greenberg Traurig
1840 Century Park East, Suite 1900
Los Angeles, CA  90067

Brian T. Feeney, Esq.
Greenberg Traurig
2001 Market Street
Suite 2700 Two Commerce Square
Philadelphia, PA   19103
        *Counsel for Appellee*

Brian Melendez, Esq.
Dykema Gossett
90 South Seventh Street
4000 Wells Fargo Center
Minneapolis, MN   55402

David H. Kramer, Esq.
David J. Strandness, Esq.
Wilson, Sonsini, Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, CA   94304

Tonia Ouellette Klausner, Esq.
Brian M. Willen, Esq.
Wilson Sonsini Goodrich  Rosati
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY   10019-6002
        *Counsel for Amicus Appellees*

————————————

OPINION[*]

————————————

AMBRO, <u>Circuit Judge</u>

Bill Dominguez appeals the District Court's grant of summary judgment in favor

of Yahoo!, Inc. on his claim that Yahoo violated the Telephone Consumer Protection Act

(the "TCPA"), 47 U.S.C. § 227, by sending him approximately 54 unsolicited text

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

2

messages per day over the course of 17 months. We decide whether the District Court correctly concluded that no reasonable juror could find Yahoo's text-messaging system to qualify as an "automatic telephone dialing system" under the statutory definition. In light of the intervening statutory interpretation by the Federal Communications Commission ("FCC"), we vacate and remand for further proceedings.

## I. BACKGROUND

In December 2011 Dominguez bought a cell phone that came with a reassigned telephone number. The previous owner of the number had subscribed to an email-notification service offered by Yahoo. That service sent a text message to the owner's phone number every time an email was sent to the owner's linked Yahoo email account. Because the previous owner never cancelled his subscription when the number was reassigned, Dominguez inherited the prior owner's text-message notifications when he bought his new phone. Each time a new email reached the previous owner's inbox, Yahoo's system sent a text-message notification to Dominguez's phone.

In short order the messages began piling up. Dominguez first unsuccessfully tried to put a halt to them by unsuccessfully replying "stop" and "help" to some texts. Then he sought out Yahoo's customer service for help but was told that the company could not stop the messages and that, as far as Yahoo was concerned, the number would always belong to the previous owner. Having exhausted the company route, Dominguez called a representative from the FCC, who then participated in another call (with Dominguez on the line) to Yahoo's customer service. When this too failed to stop the messages,

3

Dominguez filed complaints with the FCC and the Federal Trade Commission, yet again to no avail.

Having received 27,809 text messages over 17 months, Dominguez filed a putative class action under the TCPA, which forbids "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ['autodialer'] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A successful plaintiff under the TCPA is entitled to $500 in damages per violation. 47 U.S.C. § 227(b)(3)(B). Therefore, Dominguez stands to win $13,904,500. Yahoo moved for summary judgment. It argued that the statute requires an "autodialer" to have "a random or sequential number generator," *Id.* § 227(a)(1)(A) & (B), and its text-messaging system did not generate numbers at all; instead, it dialed numbers from a compiled list.

In response, Dominguez argued that, while one meaning of "sequential" is "in numerical sequence," an autodialer might also meet the statutory definition if it dials *non-sequential* numbers in a *sequential* manner (*i.e.*, by placing them in a queue and dialing them one at a time). Alternatively, he argued that the FCC has interpreted the statute to cover "any equipment" with the *capacity* to "generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2003 FCC Ruling"), 18 FCC Rcd. 14,014, 14,092 (July 3, 2003) (emphasis added).

4

The District Court sided with Yahoo on both issues. First, the Court agreed that the phrase "random or sequential" refers to the types of numbers (random or sequential ones), not the manner they are dialed. Second, it rejected the FCC's interpretation as contrary to the TCPA's plain language and inapplicable outside the narrow context of "predictive dialers." Finding no evidence that Yahoo's system could generate random or sequential numbers, the Court awarded summary judgment in Yahoo's favor, and Dominguez appealed.

Finally, after briefing and oral argument and while this case was under submission, the FCC issued a declaratory ruling and order in July 2015 further clarifying the meaning of an autodialer. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 WL 4387780, at *5–*6 (F.C.C. July 10, 2015) ("2015 FCC Ruling"). Both parties submitted letters under Federal Rule of Appellate Procedure 28(j) apprising us of this ruling.

## II. DISCUSSION

The only issue on appeal is whether a reasonable trier of fact could find Yahoo's system qualifies as an "automatic telephone dialing system" (the term "ATDS" or "autodialer" for short). We start with the statute itself. The TCPA defines an "autodialer" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a *random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). The statute's reference to a "random or sequential number generator" reflects that, when the statute was enacted in 1992, telemarketers typically used autodialing equipment that either called numbers in

5

large sequential blocks or dialed random 10-digit strings. Thus, the FCC initially interpreted the statute as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed.

That interpretation changed as telemarketers' dialing technology evolved. Around the turn of this century, the FCC took note that "the evolution of the teleservices industry ha[d] progressed to the point where . . . [it was] far more cost effective" to dial from stored databases of numbers rather than generate them randomly or sequentially. 2003 FCC Ruling, 18 FCC Rcd. at 14,093. In light of these advancements, the FCC sought comment on whether to update its interpretation. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17,459, 17,474 (2002). The reaction was mixed. While some commenters argued that the statutory text plainly defined an autodialer by its capacity to generate random or sequential numbers, others contended that limiting the statute to antiquated technology would gut the statute and eviscerate its protections.

In a series of declaratory rulings—the most recent being the one referred to above in July 2015, *see* 2015 FCC Ruling, 2015 WL 4387780, at *5–*6—the FCC appeared to take a middle-of-the road view. Although hardly a model of clarity, its orders (as we interpret them) hold that an autodialer must be able to store or produce numbers that *themselves* are randomly or sequentially generated "even if [the autodialer is] not presently used for that purpose." *Id.* at *5. But importantly, in the most recent ruling the FCC also clarified that neither "present ability" nor the use of a single piece of equipment

6

is required.  Thus, so long as the equipment is part of a "system" that has the latent

"capacity" to place autodialed calls, the statutory definition is satisfied.

Turning to our case, we apply the normal burden-shifting framework applicable at

the summary-judgment stage of litigation.  "Summary judgment is appropriate only

where, drawing all reasonable inferences in favor of the nonmoving party, there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a

matter of law." *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005).

The party seeking summary judgment bears the initial burden of production.  *See Celotex*

*Corp v. Catrett*, 477 U.S. 317, 323 (1986) (White, J., concurring) (plurality opinion).  It is

only once this showing is made that the burden shifts to the non-moving party, who must

then demonstrate the existence of a genuine issue of material fact with respect to each

element of the cause of action for which it bears the burden of proof.  *Id.* at 324.

Although we agree with the District Court's definition of "random or sequential"

number generation (*i.e.*, the phrase refers to the numbers themselves rather than the

manner in which they are dialed)[1] and its holding that the statutory definition does in fact

include such a requirement,[2] we disagree that the record supports the entry of summary

---

[1] To the extent the District Court held otherwise, we clarify that the statutory definition is explicit that the autodialing equipment may have the capacity to store *or* to produce the randomly or sequentially generated numbers to be dialed.  We acknowledge that it is unclear how a number can be *stored* (as opposed to *produced*) using a "random or sequential number generator.  To the extent there is any confusion between the parties on this issue (or whether Yahoo's equipment meets this requirement in Dominguez's case), the District Court may address it on remand.

[2] Because we reject Dominguez's claim that the FCC has interpreted the autodialer definition to read out the "random or sequential number generator" requirement, we need

judgment in Yahoo's favor. The only evidence Yahoo can point to that is probative of whether its equipment has the requisite capacity is the conclusory affidavit of its expert Ajay Gopalkrishna, who states that "[t]he servers and systems affiliated with the Email SMS Service did not have the capacity to store or produce numbers to be called, using a random or sequential number generator, and to call those numbers." Not only does this restating of the statutory definition amount to nothing more than a legal conclusion couched as a factual assertion, *compare with* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."), it begs the question of what is meant by the word "capacity." Because this is an issue of heightened importance in light of the 2015 FCC Ruling, and the District Court did not previously have the benefit of the FCC's ruling in addressing the issue,[3] remand is appropriate to allow that Court to address more fully in the first instance whether Yahoo's equipment meets the statutory definition.

Finally, in remanding for further briefing and factual development (if appropriate), we recognize that Yahoo asserts in a footnote of its brief that both parties agree it is the

not reach his argument regarding the Hobbs Act, which gives "[t]he court of appeals . . . exclusive jurisdiction to . . . determine the validity of . . . all final orders of the [FCC]." 28 U.S.C. § 2342.

[3] The meaning of capacity is only very briefly addressed in a footnote of the District Court's decision. *See Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 641 n.8 (E.D. Pa. 2014) ("Recently, courts and commentators have observed that many modern technological devices, including smartphones, could store or produce numbers and dial such numbers without human intervention if outfitted with the requisite software. Thus, they have drawn a distinction between a system's present capacity (as currently designed) and its potential capacity.").

equipment's "present capacity" that is relevant to the statutory definition. Despite the significant clarification on the meaning of "capacity" provided by the FCC, we believe remand is still the appropriate course of action. Moreover, the District Court may consider on remand whether Dominguez properly preserved this issue (and how any "waiver" might be affected by the intervening 2015 FCC Ruling).

*    *    *    *    *

For the above reasons, we vacate the opinion of the District Court and remand for further proceedings.